**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| KEEGAN WARREN and | § | |
| J. PATRICK MURPHY, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| WHITE LAKE NATURE PROJECT, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COME Keegan Warren and J. Patrick Murphy ("Plaintiffs"), and file this their Original Complaint against Defendant White Lake Nature Project, LLC. Plaintiffs would respectfully show the Court the following:

### I.  THE PARTIES

1.1     Plaintiffs are residents of Tarrant County, Texas, with their principal residence located at 604 Candlewood Road, Fort Worth, Texas 76103. Their residence, including its access to White Lake, forms the subject matter of this lawsuit.

1.2     Defendant White Lake Nature Project, LLC ("Defendant") is a Texas limited liability company that can be served with process by serving its registered agent, Mark Olmstead, at 800 S Blue Mound Rd., Suite #200, Fort Worth, TX 76131.

### II.  JURISDICTION AND VENUE

2.1     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because one or more of Plaintiffs' causes of action is created by federal law, specifically 42 U.S.C. § 1982, as well as the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

2.2    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all or part of Plaintiffs' claims accrued in Tarrant County, Texas, which is within this district and division.

### III.  FACTUAL BACKGROUND

*Plaintiffs Purchase their Dream Home, and Defendant Destroys the Dream*

3.1    In May 2023, Plaintiffs found and purchased their dream home, complete with beautiful trees and a private lake close to downtown Fort Worth. They were recently engaged, and looked forward to building a life that included use of the lake, including kayaking and canoeing. The previous home owners had used the lake for kayaking.

3.2    The previous home owners, however, were white. Plaintiffs are a mixed race couple. Within a few weeks of Plaintiffs moving into their new home, Defendant trespassed onto Plaintiffs' property and destroyed Plaintiffs' trees. Defendant subsequently attempted to permanently block Plaintiffs' lake access with a chain-link eye sore. Defendant has not merely pursued its business interests without due consideration for its fellow landowners who share access to White Lake, it has acted against Plaintiffs with racial animus. Defendant and its agents should be enjoined from taking any further action to destroy the value of Plaintiffs' dream property, or to impose restrictions on them which are racially motivated, and should be required to make Plaintiffs whole for the damage Defendant has already caused.

*Purchase by Plaintiffs and Trespass by Defendant*

3.3    On Friday, May 19, 2023, the home located at 604 Candlewood Road, Fort Worth, Texas, 76103 (the "Candlewood Home") was listed for sale. The home was immediately a hot commodity, with the listing boasting about the lakefront location with breathtaking views of downtown Fort Worth's skyline. Attached hereto as Exhibit A are photos taken of the Candlewood Home at the time it was listed for sale.

3.4     The Candlewood Home is located in White Lake Hills.  The original developer of White Lake Hills marketed the neighborhood by representing that White Lake was a private lake for the use of the residents. While there are only a few lakefront properties, many of the residents enjoy views of White Lake, and White Lake was known for its excellent bass fishing. When the developer considered filling in White Lake, the neighborhood banded together to prevent it, with more than a thousand residents signing a petition to ensure that White Lake would remain for the neighborhood to continue to use and enjoy.

3.5     The Candlewood Home was, on information and belief, the only home with lake access on White Lake. Attached hereto as Exhibit B is a true and correct copy of a survey of the Candlewood Home, which shows that Plaintiffs' property includes lakeshore and lakebed. Other owners of property on White Lake include the Catholic Archdiocese of Fort Worth; Florence Ross-Visram ("Florence"), who owns a vacant lot immediately adjacent to Plaintiffs' Candlewood Home property, and Defendant, which now claims to control the entire lake.

3.6     When visiting the property, Plaintiffs observed the former owner's kayak lock near the shoreline. Google and Apple Maps satellite images showed, and Apple Maps still shows, the kayak in the same location. Plaintiffs were excited about the prospect of using White Lake for recreational purposes. After their visit, Plaintiffs quickly put down an offer to purchase the property.

3.7     Given the proximity to downtown, and the unique aquatic nature adding to the attractiveness of the property, the original listing price of the property greatly exceeded the average per square foot price for other homes in the same neighborhood. Nevertheless, before the end of the weekend, the former owner had three offers to purchase.  Plaintiffs supplemented their offer with a personal letter to the seller, a true and correct copy of which is attached hereto as Exhibit

C, describing the immense personal value to Plaintiffs of the views and especially the prospect of lake access, as key factors in their decision to make an offer. The seller accepted Plaintiffs' offer.

3.8    Plaintiffs closed on the property on June 20, 2023. Prior to closing, Plaintiffs contacted fence contractors to see about enclosing the property with an attractive fence. While Plaintiffs wanted a fence to protect the safety of their property, they also wanted to preserve their view and have gate access to White Lake. The same day Plaintiffs began to move their personal items into the home, one of the fence contractors came to see the property to get measurements for an estimate.

3.9    Between Friday, July 14, 2023, and Saturday, July 22, 2023, Plaintiffs traveled to Indianapolis for Keegan to compete in the USRowing Masters National Championships. While Plaintiffs were out of town, Defendant trespassed onto Plaintiffs' Candlewood Home property, destroying trees and other foliage both on Plaintiffs' property and surrounding White Lake. Plaintiffs do not know the exact date of the trespass because they were travelling. Plaintiffs only learned of the destruction because a contractor doing maintenance for Plaintiffs on the Candlewood Home texted pictures to Plaintiffs about the dramatic change to the landscape.

3.10    On Monday, July 24, 2023, Plaintiffs changed their travel and work plans and returned to Fort Worth to assess the damage. Upon arriving home, Plaintiffs were greeted by a layer of sawdust, piles of wood chips, and stumps where trees once stood. Swaths of large trees and foliage on both ends of the Plaintiffs' Candlewood Home property had been mechanically destroyed and chipped on site. Plaintiffs found wood shards resting at the base of the rear doors and windows of the house, suggesting that there was no care or concern given to where the resulting debris ended up.

3.11    Plaintiffs learned that Defendant was responsible for the devastation. Plaintiffs quickly prepared a cease-and-desist letter concerning the trespass and hand-delivered it to Mark Olmstead ("Olmstead"), Defendant's registered agent. A true and correct copy of the cease-and-desist letter is attached hereto as Exhibit D. Included with the letter was the survey of Plaintiffs' Candlewood Home property.

### Defendant's Initial Pretense of Cooperation

3.12    The following day, Plaintiffs spoke with Olmstead by telephone. Olmstead confirmed receipt of the cease-and-desist letter and admitted fault for the destruction of trees and foliage on Plaintiffs' property. Olmstead blamed Defendant's contractors for the mistake. Olmstead divulged that Defendant was clearing land around White Lake because its insurance company was purportedly requiring Defendant to complete a fence encircling White Lake, even though Defendant does not own all the land surrounding White Lake. According to Olmstead, the fence is required to prevent fishing and other use of White Lake by the public. Olmstead orally committed to Defendant's financial responsibility to restore Plaintiffs' Candlewood Home property and promised that Defendant would not trespass on Plaintiffs' property again.

3.13    On Friday, July 28, 2023, Mr. Bobbie Parsons, Jr. ("Parsons"), the general superintendent of Aggregate Capital and Development Company ("Aggregate"), emailed Plaintiffs that surveyors would be on site on Monday, July 31, 2023, at 8am. According to Defendant, Aggregate is the company Defendant hired to serve as superintendent for the construction of a fence. The surveyors proceeded to stake the purported property line pursuant to Defendant's survey. Plaintiffs requested a copy of such survey, which Parsons later emailed. Defendant's survey is a 2021 small-scale (less detailed) survey of the White Lake area, not of a specific parcel. A true and correct copy of Defendant's small scale survey is attached hereto as Exhibit E. Despite

the small scale, Defendant's survey clearly shows that Plaintiffs' Candlewood Home property extends to the lakeshore and lakebed. Plaintiffs emailed Defendant to request confirmation that Exhibit E was the most recent survey. Defendant did not respond.

3.14    On Tuesday, August 8, 2023, Plaintiffs observed and spoke with three workers walking near Plaintiffs' Candlewood Home property. Plaintiffs greeted the men and asked about the nature of their business. One man replied that he did not know what they were doing, while another stated that he was telling the other two about "the job." He declined to elaborate.

3.15    On Friday, August 11, 2023, Parsons set up an appointment with Plaintiffs for Wednesday, August 16, 2023, to review the damage to Plaintiffs' Candlewood Home property.

3.16    Plaintiffs continued to observe workers trespassing on their property without consent. Plaintiffs contacted Olmstead again by phone to advise of the ongoing trespass. In addition to affirming a commitment to restoration of the damage, Olmstead stated that a rope could be installed to mark the property line. Parsons later emailed to apologize for ongoing trespasses onto the Plaintiffs' Candlewood Home property by workers and committed to having a physical barrier installed to demarcate the property line.

3.17    On Monday, August 14, 2023, Defendant's workers strung ropes to metal posts to mark the property line. Nonetheless, workers continued to regularly cross the rope line, even storing equipment across the line on Plaintiffs' Candlewood Home property.

3.18    On Wednesday, August 16, 2023, Plaintiffs met with Parsons and Robert Whittaker ("Whittaker"), the registered agent and owner of Magnolia Fence & Patio ("Magnolia"), to walk the property and discuss the damages Defendant caused to Plaintiffs' Candlewood Home property by destroying the trees and foliage. Parsons and Whittaker confirmed that their workers were

responsible. Whittaker stated that he believed that restoration of the damage to the Property would need to wait until the fall due to the Texas heat.

3.19    During the discussion with Whittaker and Parsons, Plaintiffs commented that their survey demonstrated that they owned lake shore and lakebed and therefore, lake access. Whittaker and Parsons stated they had not seen the Plaintiffs' survey—despite its prior delivery to Defendant—and asked for a copy. Parsons then echoed Olmstead's statements that the Defendant's goal was to fence all White Lake to prevent public fishing. At this time, Plaintiffs explained that they were already planning to erect a non-scalable privacy fence at the front of their Candlewood Home property and raised the possibility of collaborating with Defendant – including possibly providing Defendant an easement – to install a low-profile gated fence on the back of Plaintiffs' Candlewood Home property. Whittaker mentioned that collaborative decision-making regarding a fence would need to take place quickly but did not provide any specific timeline.

3.20    Whittaker also requested that the group start a group text thread to exchange fence designs that would not interfere with Plaintiffs' use and enjoyment of their property. Plaintiffs started the text thread as soon as the meeting ended. Plaintiffs reaffirmed their willingness to collaborate on a fence provided that it did not interfere with their use and enjoyment of their property. Through a series of texts, it seemed that there was mutual agreement that a collaborative process would best meet all needs.

3.21    Throughout that same day, Plaintiffs observed Defendant's workers continuing to trespass on Plaintiffs' Candlewood Home property as they worked. Watching the progress of the work throughout the day, Plaintiffs also began to suspect that the workers were starting construction on a fence that would not only follow the property line on land but would in fact continue within the lake itself. Plaintiffs emailed a second demand letter to Olmstead, Parsons, and

Whittaker regarding the continuing trespass. The letter expressed Plaintiffs' concern that the now apparent path of the Defendant's fence would block the Plaintiffs' access to White Lake and prevent their use and enjoyment of their property. A true and correct copy of Plaintiffs' second letter is attached hereto as Exhibit F. As the letter shows, Plaintiffs again expressed their desire to collaborate with Defendant.

3.22    On Thursday, August 17, 2023, Alex Sieck and an unnamed man, both surveyors with Dunaway, and an employee of Magnolia, came to the work site. Mr. Sieck told Plaintiffs that they and their neighbor Florence each had lake access. Nevertheless, on Friday, August 18, 2023, the workers began installing fence posts with mechanized equipment. Plaintiffs were forced to cancel business meetings from their home offices due to the noise.

3.23    On Monday, August 21, 2023, the workers began installing top railings connecting the fence posts and hanging chain link. Workers continued to trespass on Plaintiffs' Candlewood Home property throughout the day. In contravention of the Tarrant County fire ban, they also used outdoor welding equipment with none of the safeguards required by the Tarrant County Fire Marshal. The workers' welding activities burned and blackened at least four separate locations on Plaintiffs' Candlewood Home property. For no apparent reason, the workers completed only the isolated section of fence in front of Plaintiffs' bedroom window and back patio, leaving gaps in the fence running the entire length of the neighbors' parcels to the north and south. The majority of the lake also remained unfenced, including the half-mile stretch along Oakland Avenue.

3.24    On August 24, 2023, Plaintiffs observed workers pouring concrete to support the fence poles, making it clear that Defendant intends for the fence to be a permanent structure. Based on information and belief, Plaintiffs think that one or more poles may be on their Candlewood

Home property. Moreover, the fence line, erected on land and within the lake, completely cuts off Plaintiffs' access to White Lake.

3.25    Attached hereto as Exhibit G are true and correct copies of pictures taken from the back of Plaintiffs' Candlewood Home property looking toward White Lake. Plaintiffs' once scenic panoramic view of White Lake framed by trees and foliage with downtown Fort Worth in the distance has been destroyed. After Defendant's harmful activities, Plaintiffs woke up daily to see a chain link fence, barren land, trash, and various construction implements strewn about the lake shore. Then it got worse.

*Litigation, Bad Faith, and Racially Motivated Harassment*

3.26    At the end of August 2023, Plaintiffs brought suit in state court to enjoin further interference by Defendant, and sought declaratory relief regarding the parties' respective rights. An agreed temporary injunction was entered on September 28, 2023. A true and correct copy of the Agreed Temporary Injunction is attached hereto as Exhibit H. The next month, being enjoined from further construction *on the fence*, Defendants nevertheless targeted Plaintiffs by beginning construction of *a rock levee,* roughly five feet behind the fence. Defendant represented at the time that the rocks were necessary to create a "fish habitat." On information and belief, Defendant did not plan or begin "fish habitat" levees on any other part of White Lake.

3.27    The rock levee consists of a row of boulders which, even if the fence were removed, would create a physical barrier to Plaintiffs' lake access. The environmental department of the City of Fort Worth stopped Defendant from completing any further work on the levee, after a piece of heavy equipment overturned, spilling hydraulic fluid and diesel in the lake and severely fouling the air in Plaintiffs' back yard.

3.28    The parties engaged in settlement discussions during the course of the lawsuit, including mediation, but Defendant, which had permitted the white previous owner of the Candlewood Home to kayak and use the lake, now took the position that Plaintiffs – different in no way from previous owners except that they are a mixed race couple – have no right to access or enjoy the use of the lake.

3.29    Since then, on November 1, 2024, Defendant erected a lighted flagpole with two flags in the lake near the Candlewood Home property line, positioned to dominate the view from Plaintiffs' house. The ring of LED lights atop the pole shines all night long in direct line of sight of Plaintiffs' bed. Plaintiffs observed Defendant testing locations for the flagpole, and Defendant settled on a location where the flagpole is hidden from view for everyone but the Plaintiffs, including the white neighbors to the north and south as well as the public using roadways near the lake. The two flags, one of which appears to have specially made content, and the other of which depicts a scene of violence perpetrated by a sniper, were positioned to be readable from only the Plaintiffs' home.

## IV.  CAUSES OF ACTION

4.1    *Alternative Pleadings*.  To the extent necessary, each of the claims set forth below is pled in the alternative. Further, to the extent necessary, all allegations set forth above in the Factual Background section of this Complaint, or below in any of the enumerated counts, are hereby referenced and fully incorporated in each of the claims below by this specific reference, as though set forth in full.

**Count 1:        Racial Discrimination under 42 U.S.C. § 1982**

4.2        42 U.S.C. § 1982 states, "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, sell, hold, and convey real and personal property."

4.3        As explained by the Fifth Circuit,

> To effectuate the remedial purposes of this statute [42 U.S.C. § 1872], the Supreme Court has broadly construed its language "to protect not merely the enforceability of property interests acquired by black citizens but also their right to acquire and use property on an equal basis with white citizens." Section 1982 guarantees "the right of blacks not to have property interests impaired because of their race."

*Evans v. Tubbe*, 657 F.2d 661, 662 (n.2) (5th Cir. 1981), citing *City of Memphis v. Greene*, 451 U.S. 100, 101 S.Ct. 1584, 1596-97 (1981).

4.4        Plaintiff Warren is a citizen of the United States and she is Black. Her partner Plaintiff Murphy is also a US citizen and is white. Defendant has impaired Plaintiffs' property rights because of Plaintiff Warren's race, in violation of 42 U.S.C. § 1982. Defendant is aware, and has been aware at all relevant times, of Plaintiff Warren's race and Plaintiff Murphy's race. Despite claiming that insurance or other factors required fencing of White Lake, Defendant did not fence its property, nor the lake, during the first seventeen months after it acquired the real property it now claims gives it control of the lake. It only did so once Plaintiffs moved in. And as set forth above, the fence Defendant built to keep Plaintiffs out of the lake did not initially extend or continue along the parts of the lake just north and south of Plaintiffs' Candlewood Home, where the adjoining parcels have white owners. The unfenced portion of the lake, for months after Defendant's trespass onto Plaintiffs' property, also included a half-mile stretch along Oakland Avenue, where access by the public would be easiest, and risk of liability might be considered highest.

4.5     Similarly, the only portion of the lake where Defendant has attempted to erect a rock levee, physically impeding lake access, is along the Candlewood Home property and one adjacent vacant lot, and not along any houses with white owners. Finally, regarding the lighted flagpole, Plaintiffs' three closest neighbors independently came to them stating that this must have been aimed at Plaintiffs. Defendant built the flagpole specifically to interfere with Plaintiffs' enjoyment of their property, and to force them out of their home.

4.6     Plaintiffs seek their actual damages from Defendant's violation of 42 U.S.C. § 1982, which has denied their full and equal enjoyment of their property, through the conduct set forth above; Plaintiffs seek declaratory relief and injunctive relief compelling Defendant to grant Plaintiffs the same access to and use of their own Candlewood Home property, and to White Lake, as has been granted to all-white households with real property along White Lake.

4.7     Pursuant to 42 U.S.C. § 1988, Plaintiffs seek their reasonable attorney's fees incurred in bringing this proceeding to enforce § 1982.

**Count 2:       Violation of Federal Fair Housing Act (42 U.S.C. § 3617).**

4.8     The Fair Housing Act protects those seeking to buy or rent a dwelling from discrimination based on race, color, religion, sex, familial status, or national origin. *See* 42 U.S.C. §3604. Although Defendant did not prevent Plaintiffs from purchasing the Candlewood Home, its conduct in literally trampling Plaintiffs' property rights, refusing lake access previously granted to white or non-mixed households, and now in harassing Plaintiffs by shining bright lights into their bedroom window, has violated 42 U.S.C. § 3617, which states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

Defendant has interfered with Plaintiffs in the exercise and enjoyment of their rights under § 3604 to purchase the Candlewood Home, and on account of their having exercised their right under § 3604 to purchase the Candlewood Home.

4.9    Plaintiffs seek their actual damages from Defendant's violation of such statute, including Defendant's denial of their full and equal enjoyment of their property, through the conduct set forth above; Plaintiffs seek declaratory relief and injunctive relief compelling Defendant to grant Plaintiffs the same access to and use of their own Candlewood Home property, and to White Lake, as has been granted to all-white households with real property along White Lake, and seek their reasonable attorney's fees in bringing this action.

**Count 3:        Pendant State Law Claim -- Negligent or Intentional Trespass to Property**

4.10    Defendant physically, intentionally, and voluntarily entered onto the Candlewood Home property, owned by Plaintiffs, cutting down trees and foliage, and erecting a fence on Plaintiffs' property.

4.11    In the alternative, Defendant unintentionally, but with gross negligence, entered Plaintiffs' Candlewood Home property, negligently and recklessly cut down trees and foliage, and erected a fence on Plaintiffs' property.

4.12    Defendant's entry and activities on Plaintiffs' property were unauthorized.

4.13    Defendant's trespass caused injury to Plaintiffs, which resulted in the following damages:

a.    Costs for removal of debris, restoration, and repair of Plaintiffs' property.

b.    Loss of market value to Plaintiffs' property;

c.    Loss of use of Plaintiffs' property;

d.    Loss of the intrinsic value of trees and plants.

4.14    Plaintiffs' injuries resulted from Defendant's gross negligence, malice, or actual fraud, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a). Defendant was grossly negligent in cutting down Plaintiffs' trees and foliage because it was clear that Defendant did not own all the property surrounding White Lake, and Defendant had a duty to identify what property Defendant had permission to access and clear before clearing trees and foliage. After trespassing to cut down Plaintiffs' trees and foliage, Defendant was notified of its initial trespass, yet Defendant continued to trespass on Plaintiffs' property and has now even constructed a fence on Plaintiffs' property. Defendant's malice is apparent from the fact that Defendant deliberately misrepresented to Plaintiffs that it would consider collaborating with Plaintiffs on a fence, when Defendant must have known at that time that construction on a chain link fence was imminent.  There was no reason for Defendant to rush forward with fencing Plaintiffs off from the lake, since they took another three to four months to begin construction on the rest of the lake fence.

**Count 4:         Declaratory Relief under 28 U.S.C. § 2201**

4.15    A justiciable controversy exists between the parties concerning Plaintiffs' property interest in White Lake and Plaintiffs' rights to access, use and enjoy White Lake.

4.16    The controversy between the parties involves a genuine conflict which concerns each party's interests in real property.

4.17    A declaration by this Court as to the rights and status of the parties will resolve this controversy and remove uncertainty.

4.18    Accordingly, Plaintiffs seek a judicial determination pursuant to 28 U.S.C. §2201, that:

a.        Plaintiffs own a portion of the lakebed of White Lake;

b.      Because Plaintiffs own a portion of the lakebed, the common law doctrine for extending ownership of the bed to the center of a lake applies to Plaintiff's Property, meaning that Plaintiffs have a right to use the entirety of White Lake.

4.19     In the alternative, Plaintiffs seek a judicial determination that Plaintiffs have an easement by implication or easement by estoppel to use White Lake for recreational purposes.

## V.   REQUESTED RELIEF

5.1     As the direct and/or proximate result of Defendant's actions complained of herein, Plaintiffs have been damaged and seek recovery of the full measure of relief and damages against Defendant including but not limited to actual and/or economic damages, nominal damages, if applicable, compensatory damages in an amount within the jurisdictional limits of this Court, exemplary damages as explained above, and all equitable relief to which they may be entitled.

5.2     Plaintiffs further seek declaratory relief under the Texas Civil Practice & Remedies Code and under the federal Declaratory Judgment Act, as set forth in paragraphs 4.18 and 4.19 above.

## VI.   FEES, COSTS, AND INTEREST

6.1     Plaintiffs have retained the law firm of Hill Gilstrap, P.C. to represent them in connection with this matter, and have agreed to pay the law firm its reasonable and necessary attorney's fees and costs in connection with such representation. Without waiving and/or limiting any other relief requested, Plaintiffs seeks to recover their reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law or in equity, specifically including 42 U.S.C. § 1988.

6.2     Plaintiffs are also entitled to and seek to recover costs of court, expert witness fees, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.  <u>CONDITIONS PRECEDENT</u>

7.1    All conditions precedent to the Plaintiffs' recovery on the claims alleged herein have been performed or have occurred.

## VIII.  <u>DEMAND FOR JURY TRIAL</u>

8.1    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a jury trial and have tendered, or will tender, the requisite fee.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that upon final hearing, Plaintiffs recovers judgment against Defendant and be awarded:

(a)    any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically), including both actual and nominal damages;

(b)    their litigation expenses and costs, including but not limited to their attorneys' fees and costs and any applicable expert fees;

(c)    costs of court, pre-judgment and post-judgment interest, at the maximum rate as allowed by law; and

(d)    such other and further relief, both general and special, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

*/s/ Frank Hill*
Frank Hill – SBN 09632000
fhill@hillgilstrap.com
Stefanie Klein – SBN 11565650
sklein@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 W. Abram St.
Arlington, Texas 76013
(817) 261-2222
(817) 861-4685 FAX

**ATTORNEYS FOR PLAINTIFF**

# Exhibit A

**EXHIBIT A**

June 2023 – Property Listed for Sale –
Lake View



Aerial View



**EXHIBIT A**

Lake View from Patio



 27/37

Back Elevation



29/37

**EXHIBIT A**

# Exhibit B

**EXHIBIT B**

REFERENCE NO: 130912
LENDER: TEXASLENDING.COM
TITLE CO: ALAMO GF# ALDAL18-AT0000030683
BUYER: RUZGYTE
DATE: 7/11/11

FORT WORTH HOUSING FINANCE CORP.
0204203868, DRTCT

COMMERCIAL GUARANTY CORP.
11733/471, DRTCT

(REC. N 15°00' W 53.0')
MEAS. N 16°17'23" W  51.94'

N 03°08'00"? W  73.30'

116.00'

1/2" I.R. FND.

MANHOLE

VARIABLE WIDTH
UTILITY EASEMENT 388-35/33

UTILITY POLE

1/2" I.R. FND.

1/2" I.R. FND.
ON LINE AT 129.32'

LOT 31

DIRECTIONAL CONTROL LINE

30
388-35/33

(REC. S 81°51' W) 134.25'
MEAS. S 82°05'03" W

63.9'
7.6'
BRICK & FRAME
RESIDENCE
7.6'
18.9'
10.6'
26.0'
22.6'
27.2'
41.2'
22.4'
18.0'

32
388-35/33

5' UTIL. ESM'T. 388-167/33
MEAS. S 88°11'00" E  150.09'
(REC. 148.85')

25' BUILDING
LINE

L=100.00'
R=471.12'

1/2" I.R. FND.

1/2" I.R. FND.

**604 CANDLEWOOD ROAD**
(50' RIGHT-OF-WAY)

SCALE: 1"=20'

LEGEND
FENCE——X
TELEPHONE——T
ELECTRIC——E
M=CONTROL MONUMENT
WOOD   STONE
CONCRETE   ASPHALT

NOTE: BASIS OF BEARINGS FOR THIS SURVEY FROM
DATA PROVIDED BY THE RECORDED PLAT.

Subject to: The following Restrictions recorded in
388-35/33, PRTCT

UTILITY LEGEND
GAS METER:   CABLE BOX:
TEL. PED:   ELEC. BOX:
ELEC. TRANS.   WATER VALVE:

FLOOD STATEMENT: By graphical plotting, the property shown hereon is located in Zone "AE" according to flood insurance rate map 48439C0195K, dated September 25, 2009. This flood statement is based on the most recent data available to the surveyor, and while this survey may show the property not to be in a special flood hazard area, all zones may be subject to some degree of localized flooding. For more information contact your local flood plain administrator or the Federal Emergency Management Agency.

PROPERTY DESCRIPTION: Lot 31, Block 11, of White Lake Hills, Unit No. 3, an Addition to the City of Fort Worth, Tarrant County, Texas, according to the plat thereof recorded in Volume 388-35, Page 33, Plat Records, Tarrant County, Texas.

SURVEYOR'S STATEMENT: The undersigned Registered Professional Land Surveyor has prepared this survey for the exclusive use of the herein named purchaser, lender and title company only. The title commitment, referenced by the G.F. number shown hereon, and provided by said title company was relied upon for the preparation of this survey. No other abstracting was performed. The undersigned acknowledges that this survey was conducted by the surveyor or under his supervision on the date shown hereon; this plat of survey and the property description set forth hereon are a true representation of facts found at the time of an actual on-the-ground survey; there are no visible, above ground encroachments, or protrusions, except as shown. The use of this survey by any parties other than those named above for any other purposes shall be at the user's own risk and any loss resulting therefrom shall not be the responsibility of the undersigned. Unauthorized use is not permitted without the express written permission of Dowdy Land Surveyors, Inc.



ROLAND RODRIGUEZ, R.P.L.S. # 4987
DOWDY LAND SURVEYORS, INC.
6850 MANHATTAN BLVD. SUITE 310
FORT WORTH, TEXAS 76120
(817) 429-9898

ROLAND RODRIGUEZ
STATE OF TEXAS
SURVEYOR

CHECKED BY:   DRAWN BY: RT

COPYRIGHT © 2011 DOWDY LAND SURVEYORS, INC. ALL RIGHTS RESERVED.

**EXHIBIT B**

# Exhibit C

**EXHIBIT C**

*May 22, 2023*

*Dear Edita,*

*We've heard that ours will be the third offer in three days on your incredible home. We're not surprised. As two people who are inspired by nature, we felt drawn to the house before we even visited.*

*We are Keegan and Patrick. By day an expert in organizational health, racial equity, and sustainability strategy for very large companies, Patrick is also a senior Board officer in the country's oldest environmental organization. He is driven by a desire to make this world a healthier place for everyone. But it is Keegan's career that motivates our move from Austin, as she is the inaugural Executive Director of the Texas A&M University's soon-to-be launched Institute on Healthcare Access. Based out of the School of Law in downtown Fort Worth, Keegan seeks to lead the Institute to change conversations at the community, state, and national level to shed more light, generate less heat, and bring people together in pursuit of the common good. She wants to gather the best ideas and the most effective people to devise, promote, and implement innovation in healthcare operations, professional education and training, financing, and public policy that narrows the gap between health needs and available, affordable services.*

*Our move to Fort Worth from Austin is not without trepidation, but it is with great excitement that we dream of falling asleep in each other's arms every night with the lights of the city in the distance, and of waking in our king-sized bed with a king-size view of White Lake. After all, water—blue space—holds great meaning and healing for us both: Patrick grew up canoeing in our home state of Missouri and on family vacations to northern Minnesota; and Keegan rows crew competitively not for its physical health benefits, but because it is a form of active meditation. White Lake offers the opportunity to blend our love of water activities in ways that help us relax together—through joint kayaking and canoeing in Patrick's family's canoe, which we would finally have reason to bring to Texas. And, certainly, we'd love easy access to cycling next to the Trinity River on the trails.*

*But to do that, we need a house that is a sanctuary. We need a house that offers respite. We need a house that engenders warmth and security and togetherness. After weeks of looking, it turns out that we need what you have built—a house that is so thoughtfully and so beautifully curated, and that would be for us, truly home.*

*Warmest regards,*

*Keegan and Patrick*

**EXHIBIT C**

# Exhibit D



**EXHIBIT D**

July 24, 2023


White Lake Nature Project
c/o Mark Olmstead, Registered Agent
800 S Blue Mound Rd, Suite #200
Fort Worth, TX 76131

Via in-person delivery, USPS certified mail, and USPS first-class mail

Re: Notice to Cease and Desist Entry upon and Activity at 604 Candlewood Road

Mr. Olmstead:

It has come to our attention that development activity at White Lake in Fort Worth, Texas, has without our permission included entry upon, damage to, and destruction of real property owned by the undersigned, Keegan Warren, and J. Patrick Murphy.

Specifically:

- between Friday, July 14, 2023, and Saturday, July 22, 2023, trees and other foliage were destroyed on land surrounding White Lake;
- destruction of the environment required entry upon and/or remaining in or on the property legally described as Lot 31, Block 11, of White Lake Hills, Unit No. 3, An Addition to the City of Fort Worth, Tarrant County, Texas, According to the Plat Thereof Recorded in Volume 388-35, Page 33, Plat Records, Tarrant County, Texas (hereinafter "the Property");
- the Property is owned by Keegan Warren and J. Patrick Murphy; and
- at no time was effective consent sought from or given by Ms. Warren or Mr. Murphy for entry upon or remaining in or on the Property.

Furthermore,

- the activity described above included damage to or destruction of the Property; and
- at no time was effective consent sought from or given by Ms. Warren or Mr. Murphy for damage to or destruction of the Property.

*Page 1 of 3*



Moreover, within the public record exists legal surveys of the property intended for destruction and/or the Property that provide constructive notice that entry upon the Property is and was forbidden, and actual notice of the same is further provided by this letter. Additionally, said survey(s) also provide constructive notice that damage to and destruction of the Property is and was forbidden, and actual notice of the same is further provided by this letter.

A copy of the survey of the Property is attached for your convenience.

Accordingly, this letter serves as notice and demand that all activity—including but not limited to entry upon, remaining in or on, damage, or destruction—immediately cease on the Property. This letter further serves as demand for restoration of the Property and/or restitution for damage to and destruction of the Property be timely made to Ms. Warren and Mr. Murphy.

Furthermore, this letter serves as notice that we will exercise our rights as owners to protect and defend our property to the full extent of the law. Should your entry or access be desired, it is imperative that you contact us first.


Respectfully,

Keegan Warren, JD, LLM


enc:1

*Page 2 of 3*

# Exhibit E



**EXHIBIT E**

**EXHIBIT E**



**EXHIBIT E**

# Exhibit F

# EXHIBIT F

| | |
|---|---|
| **From:** | Keegan Warren-Clem |
| **To:** | Mark Olmstead; Bobbie Parsons; robert@magnoliafenceco.com |
| **Cc:** | Denise Lease; patrickmurphy@u.northwestern.edu |
| **Subject:** | RE: White Lake Property |
| **Date:** | Wednesday, August 16, 2023 5:30:00 PM |
| **Attachments:** | image001.png |
| | Approved_Survey.jpg |

Mark,

We appreciate your prompt response on yet another trespass. I'm looping in Robert per Bobbie, and I'm also attaching our survey as I promised Robert I would do.

I want to take this opportunity to lay out three issues and to be transparent in good faith:

1. No fence may be built that relies on trespass upon our land. Given that there seems inconsistency between the very high-level survey y'all obtained, our larger scale survey, and the markers on the ground, there is genuine question where that line is. Regardless, we are happy to discuss permission and even a maintenance easement, but only if we collaborate on the design.
2. A fence that impedes our use and enjoyment of our property is unlawful, even if you manage to install it on your property without entering our property. We want to work with you to block public access at the front of our property, which should be more effective in any case, and to choose a design at the lakefront that is aesthetically pleasing, minimally obstructive, and does not harm our property value. We understand that neighbor Florence is in agreement.
3. As is evident on your survey and ours, we (and neighbor Florence) own a piece of the lake. By law, you cannot block our access to the lake. Private access is further substantiated by a long history of the previous owners accessing the lake for their use and enjoyment, and that right conveys with the land.

We'd also like to note that today's persistence meant we had to cancel business meetings because we received no notice of the extreme noise, and we both work from home at least part-time.

We understand your goal is to prevent public access to the lake, and we want to again express that we will gladly work with you. However, we can't do that if y'all insist on continuing your multiple unlawful and even criminal activities.

Ultimately, we understand that you have a timeline, but we hope you appreciate that had you reached out sooner, we may have come to an agreement by now. We both have various alternatives about how to respond right now, but we remain hopeful that we can work together collaboratively and congenially, as our conversation felt this morning. We look forward to your confirmation of your chosen course of action.


Respectfully,

**Keegan D. Warren, J.D., LL.M.**


**EXHIBIT F**

e: keegan@warren-clem.com
c/t: 737.733.0357



**From:** Keegan Warren-Clem <keegan@warren-clem.com>
**Sent:** Friday, August 11, 2023 4:33 PM
**To:** Bobbie Parsons <Bobbie.Parsons@aggcapital.net>
**Cc:** Mark Olmstead <markolmstead@hotmail.com>; Denise Lease <Denise.Lease@aggcapital.net>; patrickmurphy@u.northwestern.edu
**Subject:** Re: White Lake Property

Ah. Just so I'm clear, y'all did not order a new survey since 2021? Rather, the surveyor out recently merely marked the property lines in reliance on the 2021 survey, and that is the most recent?

Sent from my T-Mobile 4G LTE Device
Get Outlook for Android

---

**From:** Bobbie Parsons <Bobbie.Parsons@aggcapital.net>
**Sent:** Friday, August 11, 2023 4:27:28 PM
**To:** Keegan Warren-Clem <keegan@warren-clem.com>
**Cc:** Mark Olmstead <markolmstead@hotmail.com>; Denise Lease <Denise.Lease@aggcapital.net>; patrickmurphy@u.northwestern.edu <patrickmurphy@u.northwestern.edu>
**Subject:** RE: White Lake Property

This is the only survey we were given for the property. The surveyors came back out last week and re-marked all the property lines per this survey. See ya on Wednesday thank you

---

**From:** Keegan Warren-Clem <keegan@warren-clem.com>
**Sent:** Friday, August 11, 2023 4:14 PM
**To:** Bobbie Parsons <Bobbie.Parsons@aggcapital.net>
**Cc:** Mark Olmstead <markolmstead@hotmail.com>; Denise Lease <Denise.Lease@aggcapital.net>; patrickmurphy@u.northwestern.edu
**Subject:** Re: White Lake Property

Let's try that again. My phone went rogue...


9 AM works for us -- let's all hope for cool weather!

Thank you for the 2021 survey. Can you also provide the 2023 survey? And if by chance you have color copies, that would be great. We want, of course, to make sure our surveys align before further steps are taken.

**EXHIBIT F**

Sent from my T-Mobile 4G LTE Device
Get Outlook for Android

---

**From:** Bobbie Parsons <Bobbie.Parsons@aggcapital.net>
**Sent:** Friday, August 11, 2023 3:56:40 PM
**To:** Keegan Warren-Clem <keegan@warren-clem.com>
**Cc:** Mark Olmstead <markolmstead@hotmail.com>; Denise Lease <Denise.Lease@aggcapital.net>;
patrickmurphy@u.northwestern.edu <patrickmurphy@u.northwestern.edu>
**Subject:** RE: White Lake Property

9am if that works for you. Attached is a copy of the survey.

---

**From:** Keegan Warren-Clem <keegan@warren-clem.com>
**Sent:** Friday, August 11, 2023 2:42 PM
**To:** Bobbie Parsons <Bobbie.Parsons@aggcapital.net>
**Cc:** Mark Olmstead <markolmstead@hotmail.com>; Denise Lease <Denise.Lease@aggcapital.net>;
patrickmurphy@u.northwestern.edu
**Subject:** Re: White Lake Property

A copy of the survey would be absolutely great. We look forward to meeting you and the landscaper
on Wednesday.  What time are you thinking?

Sent from my T-Mobile 4G LTE Device
Get Outlook for Android

---

**From:** Bobbie Parsons <Bobbie.Parsons@aggcapital.net>
**Sent:** Friday, August 11, 2023 2:34:52 PM
**To:** Keegan Warren-Clem <keegan@warren-clem.com>
**Cc:** Mark Olmstead <markolmstead@hotmail.com>; Denise Lease <Denise.Lease@aggcapital.net>;
patrickmurphy@u.northwestern.edu <patrickmurphy@u.northwestern.edu>
**Subject:** RE: White Lake Property

We apologize if there were workers on your property. They have been told not to access your
property for any reason. When I was there this morning they were working down by the Montessori
school. Again we apologize and will make sure our workers do not access your property for any
reason. We will be installing a barrier on our property line to make sure no one crosses it. I will be
there Wednesday with the landscaper and a copy of the survey if you need one. Thank you

---

**From:** Keegan Warren-Clem <keegan@warren-clem.com>
**Sent:** Friday, August 11, 2023 11:25 AM
**To:** Bobbie Parsons <Bobbie.Parsons@aggcapital.net>
**Cc:** Mark Olmstead <markolmstead@hotmail.com>; Denise Lease <Denise.Lease@aggcapital.net>;
patrickmurphy@u.northwestern.edu
**Subject:** Re: White Lake Property

**EXHIBIT F**

Hi, Bobbie,

Emailing y'all today was on my to-do list, so I really appreciate you reaching out. The easy button is that any time on Wednesday works. Other days are possible during targeted windows.


Thank you,
Keegan

Sent from my T-Mobile 4G LTE Device
Get Outlook for Android

---

**From:** Bobbie Parsons <Bobbie.Parsons@aggcapital.net>
**Sent:** Friday, August 11, 2023 9:12:58 AM
**To:** Keegan Warren-Clem <keegan@warren-clem.com>
**Cc:** Mark Olmstead <markolmstead@hotmail.com>; Denise Lease <Denise.Lease@aggcapital.net>; patrickmurphy@u.northwestern.edu <patrickmurphy@u.northwestern.edu>
**Subject:** Re: White Lake Property

Can you let me know what day next week will work to meet with the landscaper to look at the trees and foliage. Thank you

Get Outlook for iOS

---

**From:** Keegan Warren-Clem <keegan@warren-clem.com>
**Sent:** Sunday, July 30, 2023 6:10:34 PM
**To:** Bobbie Parsons <Bobbie.Parsons@aggcapital.net>
**Cc:** Mark Olmstead <markolmstead@hotmail.com>; Denise Lease <Denise.Lease@aggcapital.net>; patrickmurphy@u.northwestern.edu <patrickmurphy@u.northwestern.edu>
**Subject:** RE: White Lake Property

Thank you, Bobbie.

If the surveyor needs anything from us, please feel free to share my contact information.


Sincerely,

**Keegan D. Warren, J.D., LL.M.**
e: keegan@warren-clem.com
c/t: 737.733.0357



**EXHIBIT F**

**From:** Bobbie Parsons <Bobbie.Parsons@aggcapital.net>
**Sent:** Friday, July 28, 2023 2:45 PM
**To:** Keegan Warren-Clem <keegan@warren-clem.com>
**Cc:** Mark Olmstead <markolmstead@hotmail.com>; Denise Lease <Denise.Lease@aggcapital.net>
**Subject:** White Lake Property

We just wanted to inform you that we will have surveyors on-site Monday(7-31-2023). We will be there around 8am.

Thank You
Bobbie Parsons Jr
General Superintendent
Aggregate Capital & Development Co.
800 S. Blue Mound Road
Suite #200
Fort Worth, TX 76131
Cell: 817-980-5528
Bobbie.Parsons@aggcapital.net

**EXHIBIT F**



**EXHIBIT F**

# Exhibit G

**EXHIBIT G**

Before
(May 2023)



After
(August 2023)



The after photo shows the developer's eight-foot chain-link fence, the developer's trash, and trees destroyed on the left and right by the developer to construct the fence.

**EXHIBIT G**





The rock in the before photo shows the regular level of the lake. The after photo shows both the impact of the fence on Plaintiffs' use and enjoyment of their property as well as the lake level at this time, the lowest water level in the annual cycle.

**EXHIBIT G**

Before
(May 2023)



This photo shows some of the vegetation on the northwest (left), southwest (right), and lakeshore of Plaintiffs' Property. (See next photo for after.)

**EXHIBIT G**

After
(July 2023)

These photos are evidence of the trespass and destruction of trees and foliage by Defendant Plaintiffs' Property.





**EXHIBIT G**



Taken from Plaintiffs' back patio, these photos show the lost trees and foliage destroyed by Defendant's trespass.



**EXHIBIT G**



Before
(May 2023)

After
(August 2023)

These photos from Plaintiffs' bedroom show loss of privacy as well as the prominence of the eight-foot fence.

**EXHIBIT G**

# Exhibit H

# EXHIBIT H

FILED
TARRANT COUNTY TEXAS

2023 SEP 29 AM 7: 45
MARY LOUISE NICHOLSON
COUNTY CLERK

BY _____

**CAUSE NO. 2023-006084-3**

| | | |
|---|---|---|
| KEEGAN WARREN and | § | IN THE COUNTY COURT AT LAW |
| J. PATRICK MURPHY | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | COURT NO. 3 |
| | § | |
| | § | |
| WHITE LAKE NATURE PROJECT, LLC | § | |
| *Defendant.* | § | TARRANT COUNTY, TEXAS |

## AGREED TEMPORARY INJUNCTION

On August 28, 2023, the Court considered *Plaintiff's Original Petition and Request for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction.* After reviewing the Application and the verified facts contained therein, the Court entered a Temporary Restraining Order and set a hearing on Plaintiff's Application for Temporary Injunction for September 11, 2023, at 12:30 p.m. Pursuant to Texas Rule of Procedure 11, the parties agreed to extend the Temporary Restraining until September 28, 2023. The Parties have further agreed to this Temporary Injunction.

ACCORDINGLY, the Court FINDS that the prerequisites to injunctive relief under Texas Rule of Civil Procedure 683 have been met, and Plaintiffs Application for Temporary Injunction is GRANTED.

IT IS THEREFORE ORDERED THAT:

    a. Defendant and any of its agents, contractors, sub-contractors, and employees, or anyone acting in concert with Defendant, shall be prohibited from performing any more work on Plaintiffs' Property or on Defendant's fence during the pendency of this suit;

    b. Defendant shall not destroy, remove, or otherwise modify any trees or foliage on Plaintiffs' Property;

**EXHIBIT H**

c. Notwithstanding the prohibition set forth in section (a), Plaintiffs agree to provide Defendant reasonable access to Plaintiff's Property if maintenance of the fence constructed by Defendant is necessary, provided that Defendant provides Plaintiffs with written notice at least three business days prior, except in a case of emergency which threatens damages to life or property;

d. For purposes of this Temporary Injunction only, Plaintiff's Property shall be defined as the property on the eastern side of Defendant's fence (where Plaintiffs' home is located) and Defendant's Property shall be defined as the property on the western side of Defendant's fence; and

e. Plaintiffs agree not to come on Defendant's Property including but not limited to for the purpose of utilizing the lake and/or any other portion of Defendant's Property during the pendency of this suit.

This Order shall be valid and enforceable until this case is adjudicated, and a final judgment has been entered. Failure by any party to comply with this injunction may result in the offending party being held in contempt of court, which may be punishable by fine and/or time in jail (if necessary).

The bond deposited by Plaintiffs securing the Temporary Restraining Order entered on September 11, 2023, shall be continued as security for this Temporary Injunction.

This Temporary Injunction is immediately effective upon signing and entry.

The Clerk of the Court shall issue writs of Temporary Injunction in conformity with the law and terms of this Temporary Injunction.

A trial on the merits is set to commence on _____, 20___.

TEMPORARY INJUNCTION                                                                    Page 2

**EXHIBIT H**

SIGNED on September 28, 2023, at \_\_\_\_\_4:00\_\_\_\_\_ p.m.


_____
PRESIDING JUDGE

**EXHIBIT H**

Agreed as to form:


/s/  Sean R. Looney
Sean R. Looney
Texas State Bar No. 24050949
slooney@canteyhanger.com
**CANTEY HANGER LLP**
600 W. 6th Street, Suite 300
Fort Worth, Texas 76102
Tel:  817.877.2800
Fax:  817.877.2807

**ATTORNEYS FOR PLAINTIFFS
KEEGAN WARREN AND
J. PATRICK MURPHY**


Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Ryan M. Roper
State Bar No. 24098347
ryan.roper@kellyhart.com
**KELLY HART &HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
**ATTORNEYS FOR DEFENDANT
WHITE LAKE NATURE PROJECT, LLC**